DALLAS HOTEL CO. v. DAVISON.
(No. 1293—5362.)

Commission of Appeals of Texas, Section A. Feb. 5, 1930.

709

follows from the opinion of the Court of Civil Appeals:

"Davidson sued the Dallas Hotel Company, a corporation owning and operating the Adolphus Hotel in the city of Dallas, Tex., alleging that it was an innkeeper, engaged in receiving guests for hire, and charged with the duty of furnishing rooms to its guests and protecting its guests and their moneys and properties from theft and loss while in its hotel; that on July 15, 1925, while attending a convention in the city of Dallas, he registered at the Adolphus Hotel at the implied invitation of appellant, and was assigned to room 837 in said hotel; that on entering said room he observed that the door of said room could apparently be locked with a Yale lock; that he relied on said lock and fastened or locked said door therewith and divested himself of his wearing apparel, including his tie and tie clasp and a diamond stud in said tie, and left $65 in money in his trousers pocket; that during the night after he had retired some person to him unknown entered the room and took therefrom his $65, his tie alleged to be worth $1.75, his tie clasp worth $16.50, and his diamond stud worth $600; that he was entitled to rely upon the safety of the door to his said room and the locking equipment and the fitness thereof to secure him and his said property; that appellant was negligent in failing to keep a suitable lock or bolt on said door to said room, and that the loss of his said property would not have occurred but for such failure and negligence; that the lock on the door, though purporting to be a Yale lock, could be and was opened from the outside without a key by some person, and that but for such negligence of appellant the loss would not have occurred; that said loss was the direct and proximate result of said negligence in failing to furnish and equip the door of said room with a suitable lock or bolt, and sued for and prayed judgment for the total value of the articles alleged to have been lost, in the sum of $683.25.

"Appellant answered by general demurrer, general denial, and certain special exceptions not necessary to state, and answered specially that, at the time the loss complained of by appellee, if any, occurred, it had in its said hotel and constantly kept there a metal safe, which was in good order and fit for the custody and safe-keeping of money, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, and documents of any kind. Appellant further specially answered that, at the time of appellee's loss, if any, it kept and had on the doors of its sleeping rooms, and particularly on the door of the room occupied by appellee, suitable locks or bolts and had proper fastenings on the transoms and windows of said room;

Phillips, Townsend & Phillips, of Dallas, for plaintiff in error.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for defendant in error.

SHARP, J. For a partial statement of the nature and result of this suit, we quote as

**710**

that, at the time appellee occupied room 837, and at the time of his alleged loss, if any, appellant complied in all things with article 4592, R. S. 1925, and at said time had a printed copy of said law posted on the door of said room. Appellant further specially answered that appellee wholly failed to offer to deliver the property described in his petition as having been stolen from him to appellant for custody in its metal safe, and that, by reason of such failure of appellee to so deliver his said property, he wholly failed to take advantage of the law which provides limitation of liability on the part of appellant, and wholly failed to take advantage of the means offered by appellant for the safe-keeping of appellee's said property, and that by reason thereof appellant's liability, if any, was limited to the sum of $50. Appellant further specially answered that all the articles alleged by appellee to have been lost were within the meaning of article 4592, R. S. 1925, and that appellee was guilty of contributory negligence (a) in not delivering or offering to deliver same to appellant for safe-keeping, and that such negligence was the proximate cause of his loss; and (b) in not locking the locks or bolts provided on the door of the room occupied by him at the time of his loss, and that such negligence was a proximate cause of his loss, if any. Appellant denied that it was liable to appellee in any amount, but prayed that, if recovery should be allowed, such recovery be limited to the sum of $50, in accordance with article 4592, R. S."

With reference to the facts, the Court of Civil Appeals says:

"It is shown without dispute that appellant did have a suitable lock on the door of the room where appellee's loss occurred * * *. The undisputed facts show that appellee registered in appellant's Hotel Adolphus; that he was assigned to room 837; that he occupied said room at the time his property was stolen. There was a lock on the door to the room that is called a double lock—it had two bolts, one that could be shifted by the use of the key from the outside, and one that could be shifted by the use of the key from the inside, and that, when it was locked from the inside, the key remained in the lock, and that a key could not be inserted so as to turn the bolt from the outside. It was a safe and suitable lock. There was also on this door another lock or bolt. Appellee describes it as a 'Yale' lock; some others called it a bolt. This lock or bolt extended from the inside surface of the door through to the outside surface. It could be fastened only from the inside. On the outside it was in the shape of a disc, and when fastened or locked or bolted the word 'occupied' was shown and when unlocked the word 'vacant' appeared. It was locked or bolted by turning it with a handle or knob and when so turned the bolt moved

into the socket or place for same, and the door could not be opened until the bolt was turned back. It did not work with a key but only by the knob or handle from the inside. That portion of this lock or bolt on the outside—the disc—was loose, and could be turned by pressing the thumb on the outside surface and turning it, thus removing the bolt from the socket and unlocking the door. When in safe-working condition, the outside surface or disc on this lock or bolt was not loose, and could not be thus unlocked, but this particular lock or bolt was out of repair, and could be thus unfastened or unlocked, as was demonstrated by several persons the next morning after the theft. C. T. Layton, who was an employee of appellant in the capacity of 'locksmith,' testified:

"'As to what purpose this lock, or night latch serves, and what it was on there for, it was to fasten the door at night. It was put there by the Adolphus Hotel. It was for the purpose of making the door secure while the guest was in the room at night. It was supposed to keep the door safe and secure at night if the guest was inside of the room regardless of whether it was used or not, whether this was locked or not (demonstrating). One lock would lock the door whether the other was used or not. * * * I never saw one of these night latches opened from the outside. * * * I don't think that this could be opened from the outside by the application of a man's thumb. I did not hear about it being done in this case. I sure didn't ever hear about it being done. * * * As to whether if that was done, if this kind of a lock was opened from the outside by a man putting his thumb on there and turning that disc there, that lock was bound to be out of order and if the lock was working perfectly a man couldn't do that, I never tried to open one that way. I don't think it could be done. As to whether it could be done, whether it was out of fix or not, there is nothing to get out of fix about it. That is fool-proof. It is, absolutely. That is just a straight bolt; that is not a lock. The bolt turns with the action of the handle.'

"He further testified:

"'The key shown me is the kind of key the hotel clerk gives the guests when they register. It has some kind of a tag on it to designate the number of the room number. The other kind of lock we had on the door was a night latch. I called it a night latch. There is no lock to that. You can not work this from the outside. This is only from the inside and this is the kind of lock that was on that door at that time.'

"W. S. Combes, city detective in Dallas, testified:

"'I have seen locks like that before. As to whether a lock like that, that is working perfectly can be opened from the outside by the

application of the thumb, I have tried several of them and that is the only one I have found that would work. This is the only one I have found that would open. I tried to get in several at the Adolphus Hotel. I found that the disc on the outside of the lock on the door of Mr. Davidson's room that I worked was loose.'

"There was no question as to the fastenings on the transom and the windows. The hotel did have a proper metal safe and a copy of the law, article 4592, was posted on the door of the room. Appellee did not offer to deliver his property to the hotel clerk for safe-keeping in the metal safe. Appellee, when he went to retire on the night his property was stolen, observed the two locks, as he called them, on the door, and, believing the 'Yale' lock or bolt to be safe, he properly locked it, and then shook the door to see if it was fastened or would come open, and found it was locked and would not open. He did not use the lock which locked with a key. The next morning his property was gone, and the value of same was found by the jury, and is not disputed by appellant."

We desire to supplement the statement of the Court of Civil Appeals with reference to the facts as follows:

The record shows that testimony was introduced by the Dallas Hotel Company that it had house officers whose duties were to patrol the hotel to see that no disorder was going on, check the baggage in practically in all the rooms except in the regular guest rooms, keep down disturbances, and keep out disreputable characters. The hotel also had employed a timekeeper and watchman at the door, and all employees going in and out of the hotel passed his desk and punched cards on time clock with the exception of the assistant managers and clerks; that if any one goes out with a package he examines it, and sees that nothing that belongs to the hotel is taken away, also examines their pockets; and that sometimes he catches employees with things going out of the hotel.

We quote again from the opinion of the Court of Civil Appeals:

"At the conclusion of the evidence, appellant moved for an instructed verdict in favor of appellee for $50, which was denied. The case was then submitted to the jury upon the following special issues:

" 'Special Issue No. 1: Was the bolt in question, used by plaintiff upon the occasion in question, a suitable bolt to protect the property of plaintiff in the room in question?' To which the jury answered, 'No.'

" 'Special Issue No. 2: If you have answered question numbered 1 with "Yes," you will not answer this question; if you have answered it with "No," then answer the following: If the bolt was not suitable, then was the condition of such bolt the proximate cause of the loss, if any, of plaintiff's property?' To which the jury answered, 'Yes.'

" 'Special Issue No. 3: Was the plaintiff guilty of negligence in not locking the double lock upon the door of the room in question herein, upon the occasion in question herein?' To which the jury answered, 'No.'

" 'Special Issue No. 4: If you have answered question numbered 3 with "No," you will not answer this question; if you have answered it with "Yes," then answer the following: Was such negligence, if any, found in your answer to Special Issue No. 3, a proximate cause of the loss, if any, of plaintiff's property?' No answer.

" 'Special Issue No. 5: Was the plaintiff guilty of negligence in not delivering the property in question to defendant for safe-keeping in its safe, the articles, if any, lost on the occasion in question herein?' To which the jury answered, 'No.'

" 'Special Issue No. 6: If you have answered question numbered 5 with "No," you will not answer this question; if you have answered it with "Yes," then answer the following: Was such negligence, if any, found in answer to Special Issue No. 5, a proximate cause of the loss, if any, on plaintiff's property?' No answer.

"Other special issues were then submitted as to the value of the different articles alleged to have been lost to which the jury made appropriate answers."

The case was appealed to the Court of Civil Appeals, and the judgment was affirmed. 12 S.W.(2d) 633.

The Dallas Hotel Company applied to the Supreme Court for a writ of error, which was granted upon the following proposition: "If a hotel keeper fails to bring itself within the terms of Article 4592 of the Revised Civil Statutes of Texas, 1925, so as to limit its liability, and as a result of this failure a guest loses property, negligence on the part of the hotel keeper does not follow as a matter of law, but must be shown. The statute does not impose a duty upon the hotel keeper, but was enacted for its benefit, so that if it does not bring itself within its provisions its liability is to be determined without regard to the statute, and there must be a finding of negligence to support a judgment against a hotel keeper for such a loss."

The foregoing proposition was based upon the first and second assignments, the substance of which are:

(1) The Court erred in holding that negligence on the part of the Dallas Hotel Company followed as a matter of law, on account of the failure of the hotel company to comply with the requirements of article 4592, "as shown by the undisputed evidence and finding

of the jury as to the bolt, in consequence of which Davison lost his property."

(2) Because the judgment of the trial court is not supported by the verdict, there being no finding by the jury of any negligence on the part of the Dallas Hotel Company, and such finding being necessary to support a judgment against it.

The Court of Civil Appeals, in its opinion, says: "No issue as to negligence on the part of appellant was submitted to the jury, nor was there any requested to be submitted. The case having been submitted to the jury on special issues, and no request having been made by either party for the submission of an issue calling for a finding by the jury as to whether appellant was negligent in respect to the matters complained of by appellee, such issue and finding, if necessary to support the court's judgment, must be deemed to have been found by the court in such manner as to support the judgment, there being evidence to raise such issue and to support such finding. Article 2190, R. S. 1925; City of Whitewright v. Taylor, 23 Tex. Civ. App. 486, 57 S. W. 311 (writ refused); Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132–1134; Bussey v. Davis (Tex. Civ. App.) 276 S. W. 779; Mayfield v. Son (Tex. Civ. App.) 278 S. W. 462. The trial court in its judgment 'found for plaintiff on all material allegations in plaintiff's petition contained, not determined by the jury in its verdict,' which necessarily included a finding that appellant was negligent in placing the unsafe and defective bolt on the door of the room occupied by appellee at the time of his loss. This is a complete answer to appellant's proposition. But, aside from this, considering the intent and requirements of the statute, article 4592, and the failure to comply with same by appellant, as shown by the undisputed evidence and finding of the jury as to the bolt, in consequence of which appellee lost his property, negligence on the part of appellant, we think, followed as a matter of law. 45 C. J. 1289, § 885. If appellant's assertion of error in the court's not submitting the issue of its negligence to the jury points to the proviso as to negligence in article 4592, then we will say that in our opinion that provision is not applicable. That provision has to do only with the liability of a hotel keeper for the loss of its guest's property when there has been a full compliance with article 4592 by the hotel keeper as to the several safeguards therein required, and then through some other negligence on the part of the hotel keeper, his servants or employees, the property is lost, which is not the case here."

Article 4592 of the Revised Civil Statutes reads as follows: "Any hotel, apartment hotel or boarding house keeper, who constantly has in his hotel, apartment hotel or boarding house a metal safe or vault in good order and fit for the custody of money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, or documents of any kind, and who keeps on the doors of the sleeping rooms used by guests suitable locks or bolts and proper fastening on the transom and window of said room, shall not be liable for the loss or injury suffered by any guest on account of the loss of said valuables in excess of the sum of fifty dollars, which could reasonably be kept in the safe or vault of the hotel, unless said guest has offered to deliver such valuables to said hotel, apartment hotel or boarding house keeper for custody in such metal safe or vault, and said hotel, apartment hotel or boarding hotel or boarding house keeper has omitted or refused to deposit said valuables in such safe or vault and issue a receipt therefor; provided, such loss or injury does not occur through the negligence or wrong doing of said hotel, apartment hotel or boarding house keeper, his servants, or employees, and that a printed copy of this law is posted on the door of the sleeping room of such guest."

█ The law leaves to the hotel keeper the choice of selecting either a suitable lock or bolt for the doors of the sleeping rooms used by guests, and if he elects to place a lock and a bolt upon the door, they should both be suitable for that purpose.

█ It is our opinion that the Court of Civil Appeals, in reaching their judgment in this case, misconceived the purpose of this statute. It is evident that the Legislature enacted this law for the benefit of the hotel keepers in this state, and to relieve them from burdens imposed by the common law in case of loss of property by guests. This statute does not place any new burden on the hotel keeper. It provides how he may limit his liability in an amount not to exceed the sum of $50. If he does not comply with the statute, his liability is to be determined without regard to the statute.

The courts of many states hold that a hotel keeper is an insurer of the property of his guests, but such is not the rule in this state. In this state he is liable only if he is negligent. 32 C. J. 549; Howth v. Franklin, 20 Tex. 798, 73 Am. Dec. 218.

Georgia has a statute something similar to the Texas statute, though its provisions are not identical. The Supreme Court of Georgia, in the case of Jones v. Savannah Hotel Co., 141 Ga. 530, 81 S. E. 874, 875, 51 L. R. A. (N. S.) 1168, in rendering opinion involving the Georgia statute, said: "The statute was not enacted for the benefit of travelers; for without it they could rely on the common-law liability of the innkeeper. Its purpose was to relax the stringent rule of the common law, so as to permit the innkeeper to protect himself against liability under certain circumstances."

Counsel for the Dallas Hotel Company contend that the trial court erred in rendering judgment for the plaintiff, and against the defendant in the lower court, and that the judgment of the Court of Civil Appeals in affirming the judgment was error. We sustain this contention.

It is true the trial court in its judgment "found for plaintiff on all material allegations in plaintiff's petition contained not determined by the jury in its verdict"; and that the Court of Civil Appeals in connection therewith held that said finding "necessarily included a finding that appellant was negligent in placing the unsafe and defective bolt on the door of the room occupied by appellee at the time of his loss."

■■ No issue as to negligence on the part of the Dallas Hotel Company was submitted to the jury, nor was there any requested to be submitted. The settled doctrine in this state is that negligence is a question of fact for the jury. It can only become a question of law when the facts and circumstances are such that but one reasonable conclusion can be drawn therefrom. We are of the opinion that it was necessary under the evidence and pleadings for an issue of negligence on the part of the Dallas Hotel Company to be submitted to the jury, and a finding by them made. This issue is necessary before a valid judgment upon the evidence and pleadings involved in this case could be rendered against the Dallas Hotel Company.

■ We are further of the opinion that under the facts introduced in this case neither the trial court nor the Court of Civil Appeals could find as a matter of law that the Dallas Hotel Company was guilty of negligence. Counsel for Davison contend that no issue of negligence having been submitted to the jury, and no finding by them made, the trial court had the power to make the necessary findings to support the judgment. The Court of Civil Appeals took that view, and affirmed the case upon the theory that the trial court had the power to make necessary findings to support the judgment, and that the hotel was guilty of negligence as a matter of law.

■ We think it is now the settled rule in this state that where special issues have been submitted to the jury and findings made thereon that the trial court, under the statutes and decisions, if the facts justified it, could find on such omitted issues as are in accord with, and supplemental or incidental to, and which support the issues of fact which were submitted and found by the jury and upon which the judgment is based; but we do not believe that the court would have authority to make findings upon independent grounds of recovery or grounds of defense wholly neglected and ignored by the parties to the suit, and support

a judgment upon such findings in the face of the issues submitted, and regardless of the findings by the jury, and upon issues which under reason and the statutes should be held to have been waived.

We are therefore of the opinion that the issue of negligence on the part of the Dallas Hotel Company should have been submitted to the jury, and a finding made thereon, and that the judgment entered by the trial court, and the judgment of the Court of Civil Appeals affirming same, should be reversed. In this view we are sustained by the following authorities: Ormsby v. Ratcliff, 117 Tex. 242, 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Texas Employers' Ins. Ass'n v. Wright et al. (Tex. Com. App.) 4 S.W. (2d) 31; Montrief & Montrief v. Fort Worth Gas Co. (Tex. Com. App.) 4 S.W.(2d) 964; Norwich Union Ins. Co. v. Chancellor (Tex. Com. App.) 5 S.W.(2d) 494.

The Court of Civil Appeals correctly disposed of the other assignments.

For the reasons herein stated, we therefore recommend that the judgment of the Court of Civil Appeals and the trial court be reversed, and that this cause be remanded to the trial court for a new trial.

CURETON, C. J. Judgments of the trial court and the Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.