### DALLAS HOTEL CO. v. DAVIDSON.*
(No. 1742.)

Court of Civil Appeals of Texas. Beaumont. Dec. 18, 1928.

Rehearing Denied Jan. 9, 1929.

*Writ of error granted.

634

Phillips, Townsend & Phillips, of Dallas, for appellant.

Burgess, Burgess. Chrestman & Brundidge, of Dallas, for appellee.

O'QUINN, J. Davidson sued the Dallas Hotel Company, a corporation owning and operating the Adolphus Hotel in the city of Dallas, Tex., alleging that it was an innkeeper, engaged in receiving guests for hire, and charged with the duty of furnishing rooms to its guests and protecting its guests and their moneys and properties from theft and loss while in its hotel; that on July 15, 1925, while attending a convention in the city of Dallas, he registered at the Adolphus Hotel at the implied invitation of appellant, and was assigned to room 837 in said hotel; that on entering said room he observed that the door of said room could apparently be locked with a Yale lock; that he relied on said lock and fastened or locked said door therewith and divested himself of his wearing apparel, including his tie and tie clasp and a diamond stud in said tie, and left $65 in money in his trousers pocket; that during the night after he had retired some person to him unknown entered the room and took therefrom his $65, his tie alleged to be worth $1.75, his tie clasp worth $16.50, and his diamond stud worth $600; that he was entitled to rely upon the safety of the door to his said room and the locking equipment and the fitness thereof to secure him and his said property; that appellant was negligent in failing to keep a suitable lock or bolt on said door to said room, and that the loss of his said property would not have occurred but for such failure and negligence; that the lock on the door, though purporting to be a Yale lock, could be and was opened from the outside without a key by some person, and that but for such negligence of appellant the loss would not have occurred; that said loss was the direct and proximate result of said negligence in failing to furnish and equip the door of said room with a suitable lock or bolt, and sued for and prayed judgment for the total value of the articles alleged to have been lost, in the sum of $683.25.

Appellant answered by general demurrer, general denial, and certain special exceptions not necessary to state, and answered specially that, at the time the loss complained of by appellee, if any, occurred, it had in its said hotel and constantly kept there a metal safe, which was in good order and fit for the custody and safe-keeping of money, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, and documents of any kind. Appellant further specially answered that, at the time of appellee's loss, if any, it kept and had on the doors of its sleeping rooms, and particularly on the door of the room occupied by appellee, suitable locks or bolts and had proper fastenings on the transoms and windows of said room; that, at the time appellee occupied room 837, and at the time of his alleged loss, if any, appellant complied in all things with article 4592, R. S. 1925, and at said time had a printed copy of said law posted on the door of said room. Appellant further specially answered that appellee wholly failed to offer to deliver the property described in his petition as having been stolen from him to appellant for custody in its metal safe, and that, by reason of such failure of appellee to so deliver his said property, he wholly failed to take advantage of the law which provides limitation of liability on the part of appellant, and wholly failed to take advantage of the means offered by appellant for the safe-keeping of appellee's said property, and that by reason thereof appellant's liability, if any, was limited to the sum of $50. Appellant further specially answered that all the articles alleged by appellee to have been lost were within the meaning of article 4592, R. S. 1925, and that appellee was guilty of contributory negligence (a) in not delivering or offering to deliver same to appellant for safe-keeping, and that such negligence was the proximate cause of his loss; and (b) in not locking the locks or bolts provided on the door of the room occupied by him at the time of his loss, and that such negligence was a proximate cause of his loss, if any. Appellant denied that it was liable to appellee in any amount, but prayed that, if recovery should be allowed, such recovery be limited to the sum of $50, in accordance with article 4592, R. S.

At the conclusion of the evidence, appellant moved for an instructed verdict in favor of appellee for $50, which was denied. The case was then submitted to the jury upon the following special issues:

"Special Issue No. 1: Was the bolt in question, used by plaintiff upon the occasion in question, a suitable bolt to protect the property of plaintiff in the room in question?" to which the jury answered, "No."

"Special Issue No. 2: If you have answered question numbered 1 with 'Yes,' you will not answer this question; if you have

answered it with 'No,' then answer the following: If the bolt was not suitable, then was the condition of such bolt the proximate cause of the loss, if any, of plaintiff's property?" to which the jury answered, "Yes."

"Special Issue No. 3: Was the plaintiff guilty of negligence in not locking the double lock upon the door of the room in question herein, upon the occasion in question herein?" to which the jury answered, "No."

"Special Issue No. 4: If you have answered question numbered 3 with 'No,' you will not answer this question; if you have answered it with 'Yes,' then answer the following: Was such negligence, if any, found in your answer to Special Issue No. 3, a proximate cause of the loss, if any, of plaintiff's property?" No answer.

"Special Issue No. 5: Was the plaintiff guilty of negligence in not delivering the property in question to defendant for safe-keeping in its safe, the articles, if any, lost on the occasion in question herein?" to which the jury answered, "No."

"Special Issue No. 6: If you have answered question numbered 5 with 'No,' you will not answer this question; if you have answered it with 'Yes,' then answer the following: Was such negligence, if any, found in answer to Special Issue No. 5, a proximate cause of the loss, if any, on the plaintiff's property?" No answer.

Other special issues were then submitted as to the value of the different articles alleged to have been lost to which the jury made appropriate answers.

Appellant's first and second propositions are:

Proposition No. 1: "Article 4592 of the Revised Civil Statutes of Texas, 1925, only requires a hotel keeper to have one suitable lock on the door of each sleeping room, and when a hotel keeper has such lock on the door and complies with the statute in other respects, then in case of loss of articles enumerated by the statute, the hotel keeper's liability is limited to Fifty ($50.00) Dollars, where the guest has not offered to deposit such articles in the hotel safe."

Proposition No. 2: "Where it is shown without dispute that a hotel keeper did have one suitable lock on the door of the sleeping room where a loss was alleged to have occurred, the fact that there was another lock or bolt on the door was immaterial, as was its condition, and it was error to submit issues as to whether this lock or bolt was suitable."

We shall discuss these propositions together. Article 4592 reads: "Any hotel, apartment hotel or boarding house keeper, who constantly has in his hotel, apartment hotel or boarding house a metal safe or vault in good order and fit for the custody of money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, or doc-

uments of any kind, and who keeps on the doors of the sleeping rooms used by guests suitable locks or bolts and proper fastenings on the transom and window of said room, shall not be liable for the loss or injury suffered by any guest on account of the loss of said valuables in excess of the sum of Fifty Dollars, which could reasonably be kept in the safe or vault of the hotel, unless said guest has offered to deliver such valuables to said hotel, apartment hotel or boarding house keeper for custody in such metal safe or vault, and said hotel, apartment hotel or boarding hotel or boarding house keeper has omitted or refused to deposit said valuables in such safe or vault and issue a receipt therefor; provided, such loss or injury does not occur through the negligence or wrongdoing of said hotel, apartment hotel or boarding house keeper, his servants, or employés, and that a printed copy of this law is posted on the door of the sleeping room of such guest."

We agree with appellant that this statute requires the hotel keeper to have only one suitable lock or bolt on the door of each sleeping room, not both a suitable lock and a suitable bolt. We do not understand appellee to contend to the contrary. It is shown without dispute that appellant did have a suitable lock on the door of the room where appellee's loss occurred, but it does not follow, in our opinion, that, because of this, appellant's liability is limited, as it contends, under the statute. The undisputed facts show that appellee registered in appellant's Hotel Adolphus; that he was assigned to room 837; that he occupied said room at the time his property was stolen. There was a lock on the door to the room that is called a double lock—it had two bolts, one that could be shifted by the use of the key from the outside, and one that could be shifted by the use of the key from the inside, and that, when it was locked from the inside, the key remained in the lock, and, that a key could not be inserted so as to turn the bolt from the outside. It was a safe and suitable lock. There was also on this door another lock or bolt. Appellee describes it as a, "Yale" lock; some others called it a bolt. This lock or bolt extended from the inside surface of the door through to the outside surface. It could be fastened only from the inside. On the outside it was in the shape of a disc, and when fastened or locked or bolted the word "occupied" was shown and when unlocked the word "vacant" appeared. It was locked or bolted by turning it with a handle or knob and when so turned the bolt moved into the socket or place for same, and the door could not be opened until the bolt was turned back. It did not work with a key but only by the knob or handle from the inside. That portion of this lock or bolt on the outside—the disc—was loose, and could be turned by pressing the thumb on the outside surface

and turning it, thus removing the bolt from the socket and unlocking the door. When in safe-working condition, the outside surface or disc on this lock or bolt was not loose, and could not be thus unlocked, but this particular lock or bolt was out of repair, and could be thus unfastened or unlocked, as was demonstrated by several persons the next morning after the theft.

C. T. Layton, who was an employee of appellant in the capacity of "locksmith," testified: "As to what purpose this lock, or night latch serves, and what it was on there for, it was to fasten the door at night. It was put there by the Adolphus Hotel. It was for the purpose of making the door secure while the guest was in the room at night. It was supposed to keep the door safe and secure at night if the guest was inside of the room regardless of whether it was used or not, whether this was locked or not (demonstrating). One lock would lock the door whether the other was used or not. * * * I never saw one of these night latches opened from the outside. * * * I don't think that this could be opened from the outside by the application of a man's thumb. I did not hear about it being done in this case. I sure didn't ever hear about it being done. * * * As to whether if that was done, if this kind of a lock was opened from the outside by a man putting his thumb on there and turning that disc there, that lock was bound to be out of order and if the lock was working perfectly a man couldn't do that, I never tried to open one that way. I don't think it could be done. As to whether it could be done, whether it was out of fix or not, there is nothing to get out of fix about it. That is fool-proof. It is, absolutely. That is just a straight bolt; that is not a lock. The bolt turns with the action of the handle."

He further testified: "The key shown me is the kind of key the hotel clerk gives the guests when they register. It has some kind of a tag on it to designate the number of the room number. The other kind of lock we had on the door was a night latch. I called it a night latch. There is no lock to that. You can not work this from the outside. This is only from the inside and this is the kind of lock that was on that door at that time."

W. S. Coombes, city detective in Dallas, testified: "I have seen locks like that before. As to whether a lock like that, that is working perfectly can be opened from the outside by the application of the thumb, I have tried several of them and that is the only one I have found that would work. This is the only one I have found that would open. I tried to get in several at the Adolphus Hotel. I found that the disc on the outside of the lock on the door of Mr. Davidson's room that I worked was loose."

There was no question as to the fastenings on the transom and the windows. The hotel did have a proper metal safe and a copy of the law, article 4592, was posted on the door of the room. Appellee did not offer to deliver his property to the hotel clerk for safekeeping in the metal safe. Appellee, when he went to retire on the night his property was stolen, observed the two locks, as he called them, on the door, and, believing the "Yale" lock or bolt to be safe, he properly locked it, and then shook the door to see if it was fastened or would come open, and found it was locked and would not open. He did not use the lock which locked with a key. The next morning his property was gone, and the value of same was found by the jury, and is not disputed by appellant.

■ The decisive question is the correct interpretation of article 4592, supra. As above indicated, appellant contends that, as it had a suitable lock on the door of the room occupied by appellee, and had otherwise complied with the requirements of the law, its liability under the law was limited to $50. Under this contention appellant excepted to the court's charge submitting special issues 1 and 2, supra, to the jury, in answer to which they found that the bolt on the door was not a suitable bolt to protect appellee's property, and that the condition of the bolt was the proximate cause of appellee's loss, and here insists that, as it was undisputed that it had a suitable lock on the door, the issues as to the bolt were improper and error, and that its requested instruction for a verdict in favor of appellee for $50 should have been given. We overrule this contention. While the law required appellant to place only one suitable lock or only one suitable bolt on the door, yet appellant, in attempting to avail itself of the benefit of the law, voluntarily placed both a lock and a bolt on the door, one of which—the bolt—was unsuitable and unsafe and not in compliance with the law. If a hotel keeper sees proper to place more than one lock or more than one bolt, or both a lock and a bolt, on the door of its sleeping rooms, then he must see that each and every lock and bolt so placed is suitable and safe. We do not believe that a hotel keeper, under the law, can place more than one lock or bolt, or both a lock and a bolt, on his sleeping room doors, one of which may be unsuitable or unsafe, and require a guest at his peril to elect which one, the lock or the bolt, he will use, and then, in case the guest, who has no knowledge of their condition, makes an unlucky choice and uses the lock or the bolt that is unsuitable and not safe and loses his property by reason of the insecure fastening, claim immunity or limitation of liability under the law. The placing of the lock and bolt on the door was an invitation to appellee to use either or both, and he had the right to rely upon the presumption that appellant had complied with the law and that either or both were safe. We think it but fair to say from the caution shown by the record to have been exercised by appellee that he would have

used the safe lock on the door but for appellant's having the unsafe bolt on the same.

Appellant's third proposition is: "The judgment of the court is not supported by the verdict since there is no finding by the jury of any negligence on the part of appellant, and such finding being necessary to support a judgment against appellant."

No issue as to negligence on the part of appellant was submitted to the jury, nor was there any requested to be submitted. The case having been submitted to the jury on special issues, and no request having been made by either party for the submission of an issue calling for a finding by the jury as to whether appellant was negligent in respect to the matters complained of by appellee, such issue and finding, if necessary to support the court's judgment, must be deemed to have been found by the court in such manner as to support the judgment; there being evidence to raise such issue and to support such finding. Article 2190, R. S. 1925; City of Whitewright v. Taylor, 23 Tex. Civ. App. 486, 57 S. W. 311 (writ refused); Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132-1134; Bussey v. Davis (Tex. Civ. App.) 276 S. W. 779; Mayfield v. Son (Tex. Civ. App.) 278 S. W. 462. The trial court in its judgment "found for plaintiff on all material allegations in plaintiff's petition contained, not determined by the jury in its verdict," which necessarily included a finding that appellant was negligent in placing the unsafe and defective bolt on the door of the room occupied by appellee at the time of his loss. This is a complete answer to appellant's proposition. But, aside from this, considering the intent and requirements of the statute, article 4592, and the failure to comply with same by appellant, as shown by the undisputed evidence and finding of the jury as to the bolt, in consequence of which appellee lost his property, negligence on the part of appellant, we think, followed as a matter of law. 45 C. J. 1289, § 885. If appellant's assertion of error in the court's not submitting the issue of its negligence to the jury points to the proviso as to negligence in article 4592, then we will say that in our opinion that provision is not applicable. That provision has to do only with the liability of a hotel keeper for the loss of its guest's property when there has been a full compliance with article 4592 by the hotel keeper as to the several safeguards therein required, and then through some other negligence on the part of the hotel keeper, his servants or employees, the property is lost, which is not the case here.

Appellant's fourth proposition complains that the court erred in admitting over its objection certain testimony relating to appellee's traveling and stopping at other hotels. This testimony was elicited on redirect examination, and it is contended that it was in response to matters brought out in cross-examination. We believe that the evidence was properly admitted, but, if not so, the verdict of the jury being supported by undisputed evidence, and there being nothing in the record to show that the evidence complained of was hurtful to appellant, it was therefore harmless.

Appellant's fifth proposition complains that the court erred in not submitting its special requested issues Nos. 10, 11, and 12. No. 10 inquired whether there were suitable locks or bolts and fastenings on the transom and windows of room 837; No. 11 was whether the Adolphus Hotel had a metal safe which was in good order and fit for the custody of money, jewelry, etc.; and No. 12 whether there was a suitable lock on the door of room 837 of the Adolphus Hotel at the time of the alleged loss. It was undisputed that the fastenings on the transom and windows were suitable, and that the hotel did have a suitable metal safe, and that there was a suitable lock on the door, so these facts, being undisputed, there was no necessity for their finding being submitted to the jury. Where facts are without dispute, it is not necessary to submit special issues to the jury for their finding. Moreover, the court, in his judgment, announced his findings on these facts in consonance with the undisputed evidence, so no error is shown. If under the record it could be said that the court erred in refusing the special issues, it was harmless.

The judgment should be affirmed, and it is so ordered.