## GUITAR TRUST ESTATE v. KEITH et al.
### No. 667.

Court of Civil Appeals of Texas. Eastland.
April 11, 1930.

Rehearing Denied May 9, 1930.

Touchstone, Wight, Gormley & Price and Robert B. Holland, all of Dallas, and Stinson, Hair, Brooks & Duke, of Abilene, for appellant.

B. L. Russell, of Baird, and Scarborough, Ely & King, of Abilene, for appellees.

LESLIE, J.

What is here said is in response to the motions for rehearing by appellee and appellant, respectively. We are of the opinion we erred in our former decision in reversing the judgment of the trial court in favor of T. C. Keith and as next friend for his minor son, James Albert Keith. That opinion proceeded upon the theory that the minor, James Albert Keith, at the time and place he sustained his injuries, was a trespasser upon the private premises of the appellant. Upon more mature consideration we have reached the conclusion that we erred in so holding. Therefore the opinion heretofore rendered will be withdrawn, and this one substituted therefor.

The reasons for the views we now entertain are as follows:

The suit was instituted by T. C. Keith for himself and as next friend for his minor son, James Albert Keith, to recover of the Guitar Trust Estate, composed of John Guitar, Sr., John Guitar, Jr., and Repp Guitar, trustees, damages alleged to have been sustained by James Albert Keith, and for expenses and medical treatment, etc. The injuries are alleged to have been sustained by the minor son when he fell into a pit on the defendant's property and was burned by a fire therein. The trial was before the court and jury, and upon the answers of the jury to various issues, judgment was rendered in favor of the plaintiff and defendant has appealed. The parties will be referred to as in the trial court.

The exact nature of the plaintiff's cause of action, and the special grounds of recovery, may best be gathered from pertinent and material portions of the plaintiff's petition:

"That said estate owns and operates a cotton gin known as the Guitar Cotton gin, situated in Big Spring, Howard County, Texas.

"That the plaintiff herein, James Albert Keith is a minor of tender years, approximately seven years of age, and that he and T. C. Keith reside in Callahan County, Texas, and the trustees of the Guitar Trust Estate reside in Taylor County, Texas.

"That defendant owned and operated a gin plant in Big Spring, and said plant was located on the northwest corner of the block at Cypress and Howard Streets; that the gin yard was open to pedestrians living east of said property, who had for many years used the path across defendant's property.

"That prior to October 27, 1928, the defendant in connection with the operation of its gin plant had excavated a large pit on its property, which pit was used for the purpose of burning leaves and trash from the gin; that said pit was situated upon the property of the defendant, but immediately adjacent to the street and across the path that had been made by the pedestrians crossing said property, said pit being about fourteen feet square and approximately four or five feet deep. That the dirt thrown out of the pit was thrown on the side. The side next the street was left level and unobstructed.

"That there was no definite line or mark indicating the exact location of the street, and it was determined with difficulty just where the property line of the defendant began and where the street ended.

"That there was no guard of any kind protecting pedestrians from the pit; that the pit was in fact situated within a very close distance from the street line, approximately two feet; that there was no guard of any description around said pit, and it was left entirely open. That the defendant had burned cotton seed and other refuse from the gin, and after the fire had apparently died out the pit looked as if there was nothing in it but ashes, but that in truth and in fact immediately underneath the ashes that were on top, there was a smoldering fire, which fire was entirely out of view of anyone looking down into the pit, and could not be seen from the level of the ground.

"That all kinds of old rubbish had been thrown into the fire and all had been destroyed by fire except a few old light globes.

"That the plaintiff, James Albert Keith, on or about the 27th of October, 1928, was traveling along the path across defendant's property from his grandmother's house to a little store that was situated opposite and beyond the defendant's gin plant, and that the plaintiff, James Albert Keith, was rightfully and legally passing along the path; and in passing along the path he came close to the pit above described; that he was a child of tender years, and the location and construction of the pit, and the condition it was in was attractive to him and to children in general, and this plaintiff, in his childish disposition and curiosity was playing on and around the defendant's property, and in passing by said pit observed that there was some old light globes in the pit. Out of his curiosity he stopped and was looking into the pit to see what else, if anything, he could observe; that

while near the pit he slipped and fell into the pit, the pit having been dug in a soft soil, where the weight of the child would cause the bank to cave, and it did cave with the child and he slipped into the pit and into the smouldering fire.

"That at the time of the accident, Mrs. T. C. Keith, the mother of the plaintiff, and the plaintiff, were visiting in Big Spring and staying with Mrs. Keith's mother, who lived diagonally across the block from what is known as Leonard's store. That the people who lived in the vicinity of Mrs. Keith's mother's residence have made a well-defined trail across the property of the defendant, and that the trail passes near the pit. That the path had been used by the public for a long time, and it was a commonly used route for the people in that vicinity to go to what is known as Leonard's store, or to other places in that portion of the town. Defendant constructed said pit across said path.

"That the defendant, in the construction of said pit and in the operation thereof, was charged with notice that families lived around said gin plant, and near said pit, and knowing that there would be children passing around said gin plant and said pit, and playing around the plant and the street adjacent to said pit, was charged with notice that the pit in question would be an attraction to children, and that said pit by reason of its proximity to said street was dangerous to the life and welfare of the children playing in and about said property.

"That the defendant was charged with notice that children were apt to come in upon its property, there being no barrier or obstruction of any kind around said pit, nor any line or markings of any kind as to where the edge or side of the street was, the safety of humanity, and especially of children, demanded that a reasonable protection be placed about said property for their use and benefit, which would have been a very simple matter to have constructed, by constructing a grate over the top of said pit, in such a way that children could not get through it; which could have been lifted or removed in order to fill the pit with rubbish or refuse to be burned, and the grate lowered after the rubbish was dumped. This could and would have been a protection to the life and safety of this child and other children in the community; but no effort of any description was made to render the situation safe for children that would naturally pass along said street, or to protect them from the pit; but said pit was left wide open without any care or any protection of any description, and these children of tender years, without realizing the dangers in connection with said pit and not realizing that underneath the coat of ashes smouldered a fire, and when the child in its curiosity sought to investigate the contents of the pit, and

930

slipped or climbed into the pit, his little feet came in contact with the fire under the ashes; and he, being of tender years, and too small to climb out of the pit unassisted, cried for help, being compelled to endure the fire until he was terribly burned. His right foot on the inner side and dorsal surface of the right foot was a very severe and deep burn, amounting to a third degree burn; and the left foot is badly burned on the inner side and dorsal surface. He was badly burned on the medial aspect of the right ankle over the internal malleolus, and extending about one inch above the ankle. He also had a severe burn behind the external malleolus of the right ankle. In addition to these burns he had numerous small and painful burns over the dorsum of both feet, the result of which is that his right foot is shrunken in circumference at the level of the tarsometatarsel joint; the arch of his right foot being weakened and broken down and he has a flat foot as a result thereof, all of which was brought about by the negligence of the defendant, and all of which is the direct and proximate result of the burn as herein alleged, and that said injuries are permanent."

■ Other portions of the pleadings pertaining to damages, etc., will be omitted. In addition to demurrers, general denials, and special denials, the defendant pleaded that the minor, James Albert Keith, was, at the time and place of the injuries, a trespasser upon the private property of the defendant, who owed such party no duty to keep said property in a condition not to injure the trespasser.

In answer to the special issues, the jury found: (1) That the location, construction, and use of the pit on defendant's gin lot was sufficiently near the street or alley as to make it dangerous for people passing along said street or alley at the time; (2) that there was a fire in the pit at the time of plaintiff's injuries; (3) that the fire was due to defendant's employees burning rubbish therein; (4) that the employees of the defendant were negligent in the location, construction, and use of the pit at the place it was constructed and used on the occasion of the child's injuries; (5) that such negligence was the proximate cause of James Albert Keith's injuries; (6) that he fell into the pit; (7) that he used that degree of care for his own safety that a child of his age, experience, and discretion would use under the same or similar circumstances; (9) that $3,750 would compensate James Albert Keith for the injuries sustained.

Upon this verdict the court rendered a judgment in favor of the plaintiff. The defendant prosecutes this appeal and relies for reversal of the judgment upon four assignments of error and five propositions thereunder. Each of these propositions asserts and seeks to establish that the child, James Albert Keith, at the time and place of his injuries, was a trespasser upon the private property of the defendant, as such was owed no duty by the defendant to use ordinary care to avoid injuring him in the respects complained of in the plaintiff's petition, and defendant was therefore not liable. Originally we sustained the contention, but upon a reconsideration of the testimony we do not believe that we are justified in so holding. A closer analysis of the testimony leads us to the conclusion that, under the pleadings, the evidence is sufficient to acquit the child of being a trespasser at the time and upon the occasion of his injuries.

It is unnecessary to quote from the testimony, but it is our conclusion that it affords reasonable support for the allegations of the petition in the respect under consideration, and which is alone challenged. The pit was in an open space upon the defendant's property, and until the location and construction of same, the public, adults and children, appeared to have passed unrestrained over the place, and were still so using the adjacent portions of the lot. As ascertained by the surveyor or engineer, it was but 17 inches from an alley dedicated to the public for use, and being at the time used by the injured party when his attention was arrested and drawn to the pit and its contents. The pit was about 10 feet from a public street, and the dividing line between the street and alley and the defendant's private property was not marked, and was therefore unknown to the child and the public passing in or along the street or alley and over the property of the defendant. The child was of tender years, being but seven years of age, and aside from the consideration that the child's curiosity was possibly excited by a pit of considerable dimensions, it appears that the pit contained a discarded electrical fixture which arrested his attention and excited his desire. It also contained a discarded flashlight which had the same effect upon his companion of like immaturity.

Under these and other circumstances disclosed by the statement of facts, we find it necessary to overrule each and all of the appellant's propositions which challenge the judgment upon the sole ground that the minor child was a trespasser on the occasion of his injuries. We are justified in so doing, we think, upon the following authorities, and many others not necessary to cite: Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Little v. James McCord Co. (Tex. Civ. App.) 151 S. W. 835; Bustillos v. S. W. Portland Cement Co. (Tex. Com. App.) 211 S. W. 929; Pedro Sedita v. Steinberg et al., 105 Conn. 1, 134 A. 243, 49 A. L. R. 154; Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321; Coeur d'Alene Lbr. Co. v. O. J. Thompson (C. C. A.) 215 F. 8, L. R. A. 1915A, 731.

As this case comes before us the record contains no manner of objection to the court's charge. The propositions are based upon assignments, the first of which complains that the court overruled the defendant's motion for an instructed verdict at the conclusion of the plaintiff's testimony because the testimony showed the injured party to be a trespasser. The second assignment complains of the court's overruling a second motion for an instructed verdict at the conclusion of all the testimony for the same reason. The third and fourth assignments are but duplicates of the first and second, evidently directed to the same ruling of the court, and complain that the trial court rendered judgment against the defendant with the undisputed evidence showing the child, to be a trespasser. Under this character and manner of attack, and in view of the pleadings and testimony, we must necessarily overrule each of the defendant's propositions.

▆ The pit was constructed and used without guards or screens, and the jury, in response to the issues, especially 4 and 5, definitely determined that the defendant was negligent in the location, construction, and use of the pit at the time and place and on the occasion of the child's injuries, and that such negligence was the proximate cause of the injuries. Since neither party objected to the charge as submitted, it will be construed in the light of the pleadings and evidence. The submission of the issues must be presumed to have some material bearing on the case, and in the absence of objections by either party they will be presumed to embrace all controverted elements essential to a decision on the ultimate issue. Driskill Hotel Co. v. Anderson (Tex. Civ. App.) 19 S.W.(2d) 216.

The appellant presents no question challenging the accuracy or comprehensiveness of the issues submitted. And it is not believed that there arises any question as to the plaintiffs' having waived an issue essential to recovery under the rule announced in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, and Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591. If anything were lacking to support the judgment in the instant case, it would fall under the rule announced in North v. Atlas Brick Co., 13 S.W.(2d) 59, 61, where the Commission of Appeals, in discussing the matter of the trial court's having submitted a part, at least, of an ultimate controlling issue, used this language: "If it did not contain all of the elements necessary to a recovery, it at least contained some indispensable elements, and therefore was a submission in part, at least, of the issue which we have held to have been well pleaded, and such issue cannot be held to have been waived under the rule announced," in the above cases.

▆ That is, the pleadings and testimony justifying it, the court would be deemed to have indulged favorable and necessary findings in support of the judgment. The principle would evidently have application in the present case, if indeed there be any necessity for its application.

The appellant has not suggested the presence of any fundamental error in the record. We have discovered none. Therefore, for the reasons assigned, the original opinion will be withdrawn, the judgment pursuant thereto set aside, and the judgment of the trial court affirmed.

It is so ordered.

FUNDERBURK, J. (dissenting).

In the disposition of the appeal as made in the original opinion of the court the writer concurred. The concurrence, however, was based upon different conclusions from those reached by the majority. The opinion of the majority on rehearing, which supersedes the former opinion, brings us more nearly into agreement than before; but because of the views of the writer not shared by his associates, we are now in disagreement as to the proper disposition of the appeal. It is therefore deemed appropriate to give individual expression to his views upon which the conclusion is reached that the judgment of the trial court should be reversed and the cause remanded.

Plaintiffs' petition, while very full and sufficiently explicit in the allegation of facts, is nevertheless not clear in showing the particular duty or duties, a failure to perform which is claimed to constitute the negligence for which the defendant is charged with responsibility. Appellant, in its brief, shows that it construed the petition as attempting "to state three separate and distinct theories of liability on the part of the defendant." The original opinion of the majority adopted the same construction. The last opinion, it is believed, does not sanction that view. The trial court evidently construed plaintiffs' pleading as alleging negligence based upon the location, construction, and use of the pit in question too near the street or alley, and so as thereby to make it dangerous for people passing along such street or alley. Otherwise, there appears no reason to account for the court submitting to the jury special issue No. 1, reading: "Was the location, construction and use of the pit on defendant's gin lot *sufficiently near* the street or alley as to make it dangerous for *people passing along said street or alley* on October 27th, 1928?" (Italics ours.) That the pleading was not intended to charge negligence based upon such a theory is clearly shown by other allegations in the pleading itself. If such were intended as an independent ground of recovery, it is unnecessary to say that, to be available, it would have to be alleged, expressly or at least by necessary implication, that such was the proximate cause of the injury. It would be unrea-

sonable to impute to plaintiffs' learned counsel an oversight of that most essential fact. But there is not only no allegation that such was the proximate cause of the injuries complained of, but there are allegations that affirmatively show that such was not the proximate cause. To be such it was necessary to show that the injuries resulted while the little boy was "passing along said street or alley," or, at least, making some use of the street or alley as such. But it was alleged that he "was traveling along the path across defendant's property." That he was "passing along the path"; that " * * * in passing along the path he came close to the pit above described * * *"; that "plaintiff, in his childish disposition and curiosity, *was playing on and around the defendant's property* and in passing by said pit," etc. (Italics ours). "Out of curiosity he stopped and was looking into the pit to see what else, if anything, he could observe; that while near the pit he slipped and fell into the pit," etc. As clearly showing that no importance with respect to the question under consideration should be attached to the allegation that he "slipped and fell in," note the further allegation that, " * * * When the child in its curiosity sought to investigate the contents of the pit and slipped *or climbed into the pit*," etc. Even as against general demurrer, specific allegations are to be construed most strongly against the pleader. Wall v. Royal Indemnity Co. (Tex. Civ. App.) 299 S. W. 319; W. U. Tel. Co. v. Henry, 87 Tex. 165, 27 S. W. 63; Webb County v. Board of Trustees, 95 Tex. 131, 65 S. W. 878; Snipes v. Bomar Cotton Oil Co., 106 Tex. 181, 161 S. W. 1; Meador v. Rudolph (Tex. Civ. App.) 218 S. W. 520, 525; Celli v. Sanderson (Tex. Civ. App.) 207 S. W. 179; Gillis v. Rosenheimer, 64 Tex. 246; Fort Worth v. Baptist Church (Tex. Civ. App.) 268 S. W. 1016, 1019; Baker v. Galbreath (Tex. Civ. App.) 211 S. W. 626; S. A. Fire Fighters v. Bell (Tex. Civ. App.) 223 S. W. 506; Broussard v. Mayumi (Tex. Civ. App.) 144 S. W. 320, 321; Hill v. Allison, 51 Tex. 392; Mueller v. Simon (Tex. Civ. App.) 183 S. W. 63.

Under this rule, in testing the pleading as to whether or not it alleges that the location, construction, and use of the pit so near the street or alley as to be dangerous to persons passing along the street or alley, was the proximate cause of the injury, the pleading should rightfully be regarded as alleging, in addition to the other things just noted, that the child "climbed into the pit." As undertaking to state a liability for negligence upon such theory, the pleading was subject to general demurrer. It would not support a judgment based upon findings of fact applicable alone to such theory. Although it is immaterial, it is likewise true that neither would the evidence. Hence it is believed that, since the allegations are pertinent and necessary to the statement of another and different ground of liability

for negligence, it should be construed as intended to assert that ground of negligence, rather than one which it did not purport to assert, and as to which the pleading would be wholly ineffectual.

Bearing in mind now that facts cannot be alleged which will charge negligence, unless they comprehend allegations either express or implied, showing a duty to the injured party and a failure to discharge such duty, what negligence does the petition charge to the defendant? Is any duty or the failure to perform same sought to be charged in the allegation that defendant dug its pit across the pathway leading over its property? Certainly not. No one would contend that the law imposed any such unnecessary restriction on the defendant's use of its property. Is any duty charged to defendant not to locate, construct, and use the pit too near a street or alley? It is alleged that the pit was near, but there is no allegation that it was too near. As has already been said, the pleading cannot be so construed, because it affirmatively negatives the existence of essential elements of liability upon that theory. Was any duty and breach thereof sought to be charged in the allegation that defendant had a fire in the pit or burned refuse therein? No such contention is made, and yet it is no more certain that it does not than that it does assert a liability on the other grounds mentioned. The situation is that plaintiff alleged a number of facts as to the location, construction, and use of the pit (about 14 feet square and 4 or 5 feet deep), each and every act or omission of the defendant in reference to which the defendant had a perfect legal right to do or omit to do at least so far as is directly charged or reasonably to be inferred. What then was the duty which the pleading charged that defendant had failed to perform? A duty and breach thereof was alleged, as follows: " * * * The safety of humanity, and especially of children, demanded that a reasonable protection be placed about said property for their use and benefit * * * by constructing a grate over the top of the pit in such a way that children could not get through it, which could have been lifted or removed in order to fill the pit with rubbish or refuse to be burned, and again lowered after the rubbish was dumped. This could and would be a protection to the life and safety of this child and other children in the community. But no effort of any description was made to render the situation safe for children that would naturally pass along said street or to protect them from the pit, but said pit was wide open without any care or any protection of any description, etc."

No other duty or the breach thereof was alleged. No other duty or the violation thereof can be implied from all the facts alleged.

With plaintiffs' claim thus defined, let us now consider the basis upon which the judg-

ment rests. In response to special issue No. 1, the jury found that the "location, construction and use of the pit on defendant's gin lot" was "sufficiently near the street or alley as to make it dangerous for people passing along said street or alley." That finding could form no support for the judgment, for, as has been seen, such a ground of recovery was not pleaded. Even if it were attempted to be pleaded, the petition would be insufficient because affirmatively showing that that was not the proximate cause of the injury. In answer to special issue No. 2, the jury found that there was "a fire in the pit on defendant's gin lot." Why the jury should have been asked to so find, when all the testimony of both plaintiff and defendant showed that there was, in addition to the undeniable and undisputed fact of the child's burned feet, it is a little hard to see. No wrong was charged in having a fire there. The finding was wholly immaterial, and must be wholly disregarded in considering the foundations of the judgment. The same observations apply to the jury's finding in response to special issue No. 3, that the fire in the pit was "caused by rubbish being burned therein by defendant's employees." How such could have been thought to be an issue of fact in the case cannot readily be guessed. The answer to special issue No. 6, that plaintiff fell into the pit, was wholly immaterial, except as to the question of contributory negligence. To reiterate, the very allegations of the petition had shown it was immaterial, so far as charging defendant with actionable negligence was concerned, whether he fell into the pit, "or climbed into the pit." The sole support of the judgment, then, if any in the verdict of the jury, must rest upon the jury's affirmative answer to special issue No. 4, reading: "Were the employees of the defendant negligent in the location, construction and use of the pit at the place it was constructed and used, on October 27th, 1928?" The sense in which each of the words, "location," "construction," and "use" was used, if indeed there could be any other sense, was with certainty shown by the pleadings and evidence. The location was shown with reference to the distance of the pit from the street and alley by both oral testimony and plats. Also, with reference to the boundaries of defendant's lot. There was a sharply contested issue of fact as to whether the pit was located across a path over the property. Likewise, the construction of the pit by excavation made into the ground, its dimensions, the throwing of the dirt on one side, and leaving it level on the others, were fully developed by the testimony and with but immaterial variations from the allegations in plaintiffs' petition. No less certainly alleged and shown by the evidence was the use of the pit to burn waste products from the gin. As already pointed out, the acts of the defendant as to the lo-

cation, construction, and use of the pit, were each and all such as defendant had a perfect right to do. It had the right to locate the pit on its property at any place it chose to do so. It had the right to construct it just as it did. It had the right to use it for the purpose of its construction by burning waste products therein. If it be granted that there could be restrictions on such rights, then nevertheless plaintiff did not allege the facts or attempt to do so, to show the existence of such restrictions. Defendant was no more liable for (either or all) the location, construction, or use of the pit than it was for merely having a pit upon the lot, or burning trash therein, or even operating a gin on the lot, thereby making it necessary or advisable to have a pit in connection therewith. To be sure, the pleading charged a duty arising out of the exercise of all of said rights upon a breach whereof liability was claimed, but that is entirely a different matter. That presented a matter within the peculiar province of the jury, and as to which no finding by them was sought.

What may we reasonably suppose the jury had in mind in answering said special issue? A ready key to the answer to that question is furnished by their answer to special issue No. 1, that the location, construction, and use of the pit was so near the street or highway as to be dangerous to "people passing along said street or alley." Knowledge cannot properly be imputed to the jury that such danger, if it existed, was not one for which said pleadings permitted a recovery, or even sought to charge the defendant. But it is readily apparent why they found that such location, construction, and use was negligence. It therefore results that the sole and essential basis of the judgment apparent on the face of the record is the finding by the jury that certain acts of the defendant, which we must say are in themselves perfectly harmless and entirely lawful, and as to which plaintiffs in their pleadings make no claim to the contrary, constitute negligence.

True, that by defendant's failure to object to the special issues and assign the submission of same as error here, appellant has waived any right to complain of the manner of submitting the issues. But waiver of the right to complain of the judgment on that ground, if it so happen that the record discloses a judgment based wholly upon a verdict without support in the pleadings, does not relieve us of the duty to take notice of such error as a fundamental matter. This we had occasion to consider and hold in Sivalls Motor Co. v. Chastain, 5 S.W.(2d) 185. Such, in the writer's view, is the case presented here. The pleading did not allege a cause of action (nor would it support the judgment), except for negligence consisting of the violation of a duty to place a grate over the pit, or at least some such protec-

934

tion for children falling in same. We have a judgment resting solely upon a verdict consisting of the finding of harmless acts not alleged to constitute negligence. There is, it is believed, fully as great disparity between the verdict of the jury and the pleadings as was the case in Sivalls Motor Company v. Chastain, supra, where the pleading of a warranty was "that said car could give full satisfaction and operate according to the Buick standard of first-class performance," and the warranty found by the jury in respect to a special issue was that "the automobile was in first-class mechanical condition and free from defects in material and workmanship." In that case the point was controlling, and no reason is perceived why, if our conclusions did not meet the approval of the Supreme Court, that court should not have taken jurisdiction of the case. The opinion of this court in Ratcliffe v. Ormsby, 298 S. W. 930, 931, is believed to be not only applicable, but well illustrative of the point under discussion. The defendant in that case pleaded a number of independent defenses. One was to the effect that the real party to the contract sought to be enforced was a foreign corporation that was using the plaintiff, a Texas corporation, as a means of transacting intrastate business in Texas, without a permit on the part of the real party in interest to do business in Texas, and therefore had no capacity to sue. The jury found, in answer to special issues, that the foreign corporation had induced the formation of the Texas corporation for the purpose of doing business through the latter as agent, and that the Texas corporation was organized for the purpose of acting as agent for said foreign corporation. It was held fundamental error to render judgment upon such findings, because they were "merely historical evidentiary facts"; the real issue being, " * * * not who induced its formation, nor what purpose was in the mind of the one inducing it, but the manner and method of transacting business after it was formed, particularly with reference to the contract in suit herein." With slight paraphrasing it may just as well be said here, "the only issues answered by the jury were not, in fact, issues." (That is, issues tendering allegations of negligence.) "They were merely * * * evidentiary facts." "The vital question" of negligence tendered as the sole issue by the pleading "was not whether" defendant was negligent in the location, construction, and use of the pit, "but" whether it was negligent in failing to place a grate over same or in some other manner protecting it from a class of persons of which plaintiff was one. That decision also has the stamp of approval by the Supreme Court. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

It is thought to be doubtful if Rev. St. 1925, art. 2190, has any proper application to the question involved. The reference, of course, is to that part of the article reading: "Upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding." In the majority opinion importance seems to be attached to decisions such as North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W.(2d) 59, and Driskill Hotel Co. v. Anderson (Tex. Civ. App.) 19 S.W.(2d) 216, 219. It is therefore deemed appropriate, even at the expense of prolonging this discussion beyond the limits desirable, to consider the effect, if any, of said statute upon the question.

Decisions applying and denying application of this statute to the facts of different cases, it is conservative to say, would fill several volumes of the reports. It was enacted as a judicial reform—a short cut in appellate civil procedure. Like most so-called judicial reform, it has, it would seem, merely introduced another element of uncertainty and confusion into the law, possibly as undesirable, or even more so, than the evil sought to be remedied. In the beginning, the statute was given a very wide application. Later, it was determined that no party to a suit was under duty, in order to prevent its application against him, to request the submission of issues tendered by and for the benefit of his adversary. Subsequently, it was held that, where a plaintiff tendered more than one independent ground of recovery, or a defendant interposed more than one independent defense, those not submitted and not requested would not be presumed to have been found to support the judgment, but, on the contrary, that they would be presumed to have been waived. See Ormsby v. Ratcliffe, supra. In North v. Atlas Brick Co., supra, a pleading was involved which tendered an issue of "plaintiff's right to a shop right in letters patent." An issue submitted to and found by the jury was that the "defendant, while in control and management of the plaintiff company and its properties, used the time, material, labor, and equipment of the company in aid of the discovery or invention of the Klinker brick." This was a part of the alleged contract by which the shop right was claimed. Judge Speer said: "If it [that is, the issue] did not contain all of the elements necessary to a recovery, it at least contained some indispensable elements, and therefore was a submission in part, at least, of the issue which we have held to have been well pleaded, and such issue cannot be held to have been waived under the rule announced in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, and Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591, for an issue submitted in part, or even defectively submitted, with the acquiescence of the parties, is not waived."

And then, by way of illustration, the opinion continued: "It is like the ordinary *issue* of negligence in a personal injury case. The complete ultimate issue is usually made up of four *elements* or *subsidiary issues*, being those of (1) the fact alleged, (2) whether the same be negligence, (3) whether such negligence be the proximate cause of injury, and (4) the amount of damage. Now, if one or more of such *elements*, or *issues* as they are usually denominated, be submitted and the others not * * * requested to be submitted, such *issue* is not waived, but the court may find, and under the statute is deemed to have found, the unsubmitted issues in such way as to support the judgment rendered by him." (Italics ours.)

It is apparent from the foregoing quotation that "ultimate issue" is used in the same sense as independent ground of recovery or complete defense, to which article 2190 does not apply, as held in Ormsby v. Ratcliffe, supra. It also clearly appears that "subsidiary issue" or "elements" means simply an issue within the meaning of said statute. The use of the terms "ultimate issues" and "subsidiary issues," or like expressions, is, it seems to the writer, somewhat unfortunate. It has led to or is the result of some confusion in thought, manifest in the idea indicated in some decisions that of true issues there are some that are more important than others. That, it is believed, is not the case. Of issues such as it is contemplated by the statute shall be submitted to and found by the jury, it cannot properly be said that one is more important than another. True, the determination of one or more may render the determination of others unnecessary or immaterial. But, just the same, each issue in a ground of recovery or defense is just as essential as every other. "Issues" as here used does not mean evidentiary facts. Judge Speer has well illustrated what is meant by "issues" as applied to a negligence case. There is never any occasion or necessity for presuming the finding of an evidentiary fact so as to support a judgment, because the existence or not of such fact is included in the issues found and presumed to have been found under operation of the statute. It is therefore a logical corollary that, if only an evidentiary fact is submitted to and found by the jury instead of an issue, then the statute, by force of the limitations contained in its own terms, cannot operate to supply by presumption the finding of any essential issue.

Before passing from a consideration of North v. Atlas Brick Co., supra, it is well to notice that what was said, as above quoted, was dicta. The trial court had disregarded a finding of the jury as to a part, at least, of a material issue, and had given judgment contrary thereto. The reversal of the case was therefore required, whether what was said by

way of illustration or argument was correct or not. The dicta unmistakably expressed the view that, in a negligence case, if the issue of negligence was not submitted nor requested to be submitted, a finding of negligence, if the evidence would support such finding, would be presumed upon an appeal from a judgment based upon findings of proximate cause and damages, or either one of them. But the law, as declared in that dicta, had already been applied by the Beaumont Court of Civil Appeals in Dallas Hotel Co. v. Davidson, 12 S.W.(2d) 633. That court in that case had held that, upon appeal from a judgment based upon findings of the facts claimed to constitute negligence, and findings of proximate cause and damages, a finding that such facts constituted negligence would be presumed when the issue of negligence had not been submitted or requested. The Supreme Court, however, has just approved an opinion reversing that holding. Dallas Hotel Co. v. Davison, 23 S.W.(2d) 708, 713. On this point the opinion says:

"Counsel for Davison contend that no issue of negligence having been submitted to the jury, and no finding by them made, the trial court had the power to make the necessary findings to support the judgment. The Court of Civil Appeals took that view, and affirmed the case upon the theory that the trial court had the power to make necessary findings to support the judgment, and that the hotel was guilty of negligence as a matter of law.

"We think it is now the settled rule in this state that where special issues have been submitted to the jury and findings made thereon that the trial court, under the statutes and decisions, if the facts justified it, could find on such omitted issues *as are in accord with, and supplemental or incidental to, and which support the issues of fact which were submitted and found by the jury and upon which the judgment is based,* but we do not believe that the court would have authority to make findings upon *independent grounds of recovery or grounds of defense wholly neglected and ignored by the parties to the suit,* and support a judgment upon such findings in the face of the issues submitted, and regardless of the findings by the jury, and upon issues which under reason and the statutes should be held to have been waived." (Italics ours.)

The writer confesses that to him the language just quoted is not clear in meaning. When it was said, "but we do not believe that the court would have authority to make findings upon independent grounds of recovery or grounds of defense wholly neglected and ignored by the parties to the suit," it seems evident that the words "independent grounds" (of recovery or grounds of defense) are used as meaning something different from those words as employed and explained in Ormsby v. Ratcliffe, supra. Otherwise, there was no

occasion for using them, and we would be left wholly without explanation of the reasons for reversing the Court of Civil Appeals, because there was but one ground of recovery involved, and of course there being but one, it was necessarily independent. The only negligence alleged, as shown by the statement, was, "that appellant was negligent in failing to keep a suitable lock or bolt on said door to said room," otherwise stated in alleging proximate cause as, "negligence in failing to furnish and equip the door of said room with a suitable lock or bolt." Considering the judgment of the court as in part explanatory of the language of the opinion, the conclusion is inevitable that the court must have employed the term, "independent ground of recovery" in the sense of issue of negligence. But whether this be the correct interpretation of the opinion or not, it is quite certain that the question was presented to the Supreme Court to say if a finding of negligence, when no issue of negligence was submitted to the jury nor requested, would, upon appeal, be presumed to support a judgment based upon a verdict finding that the alleged negligence was the proximate cause of the injuries and finding the amount of damages, and the Supreme Court has answered that it would not.

We are therefore confronted with a rather difficult question as to what extent that decision should be regarded as having disapproved the dicta expressed in North v. Atlas Brick Company, supra. In the opinion of the writer, if the statute is to have any application whatever, except, perhaps, to supply by presumption issues' that are undisputed, the dicta in North v. Atlas Brick Company, supra, is a correct statement of the law. If the statute cannot be applied to a negligence case, as there suggested, then it cannot be applied to any case when the omitted issues are controverted in the evidence, and becomes wholly inoperative. This latest decision, approved by the Supreme Court, suggests the question whether or not the statute ought to be given any effect other than as to issues admitted or shown by uncontroverted evidence. The suggestion to the Legislature to enact such law came from the consideration of a case where a reversal was required because the jury had not found an issue about which there was no dispute. Silliman v. Gano, 90 Tex. 637, 39 S. W. 559, 40 S. W. 391. Why has its scope of operation been gradually restricted until it has reached the vanishing point, except as it is said to have reference to issues which are "supplemental or incidental to, and which support the issues of fact which were submitted and found by the jury," etc.

As already pointed out, a real issue does not require support or supplementing from any other. Each real issue is a unit just as important as every other issue in any particular ground of recovery or defense, like the links in a chain which constitutes the sole support for a suspended weight. The confusion of thought and expression has, it would seem, resulted from a failure to distinguish between issues and grounds of recovery or defense, and between issues and evidentiary facts. The existence of such confusion is not strange when we consider, for instance, that an evidentiary fact may, as a matter of law, be determinative of an issue. Example: Take an issue of abandonment of a homestead. A determinative evidentiary fact would be the acquirement of another homestead, since one cannot have two homesteads at the same time. But the distinction between an issue and such fact remains. More often an evidentiary fact is not determinative of the issue to which it relates. An important difference between an issue and an evidentiary fact, even if it be a determinative fact, is that the issue must be within the pleading, which is not true of the evidentiary fact. It is therefore entirely correct to say that the statute in question has no reference or application to evidentiary facts; nor to independent grounds of recovery or defense; but only to the one or more determinative issues involved in each independent ground of recovery or defense.

Entertaining these views, the writer, while agreeing with the dicta in North v. Atlas Brick Company, supra, if the statute is to have any effect, other than as above suggested, is nevertheless inclined to agree to the contrary holding, which is not dicta, in Dallas Hotel Company v. Davidson, supra, on the ground upon which its application has been limited from time to time, namely, that to give it the effect to supply by presumption disputed issues would result·in a denial of the constitutional right of trial by jury. Such a holding, it would seem, is the next step inevitable, if the last-named decision is to stand as a correct declaration of the law. At any rate, it is, if anything, more certain that no issue of negligence pleaded in this case was submitted to and found by the jury than it' was in Dallas Hotel Company v. Davidson, supra, and even if the writer is mistaken in the suggestion that the operation of said statute must be limited to undisputed issues, the last decision is believed to require the reversal and remand of this case on the face of the record presented.